**UNITED STATES BANKRUPTCY COURT**
**EASTERN DISTRICT OF NEW YORK**
------------------------------------------------------------X
**IN RE:**                                                                              Chapter 13
    **Romaine Gordon**                                         Case No.: 8-18-70671-las
                    **Debtor.**
------------------------------------------------------------X
   **Romaine Gordon**

               **Plaintiff,**                                            **COMPLAINT**
                                                                                      **AP:**
      **-Against-**

   **Rushmore Loan Management Services LLC**

               **Defendant.**
------------------------------------------------------------X

Plaintiff, Romaine Gordon, by her attorneys, Aronow Law, P.C., as and for her Complaint against Rushmore Loan Management Services LLC (hereinafter "Defendant" or "Rushmore") for violations of the automatic stay as set forth in 11 U.S.C. §362; the discharge injunction as set forth in 11 U.S.C. §524; the Fair Debt Collection Practices Act (hereinafter "FDCPA") as set forth in 15 U.S.C. §1692; and New York General Business Law as set forth in N.Y. GBS §349, respectfully alleges and represents to this Court, upon information and belief, as follows:

## INTRODUCTION

1. By this action, Plaintiff seeks entry of an order pursuant to 11 U.S.C. §362 and §524 of the Bankruptcy Code determining that the Defendant willfully violated the automatic stay associated with Plaintiff's Chapter 13 Bankruptcy and the discharge injunction associated with Plaintiff's prior Chapter 7 Bankruptcy, respectively; Plaintiff is entitled to actual and punitive damages as a result of Defendant's violations. Plaintiff also seeks a declaratory judgment, as well as actual, punitive and statutory damages up to $1,000 for violations of the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq.*, which prohibits debt collectors from

engaging in abusive, deceptive, and unfair practices; attorneys' fees, litigation expenses and costs pursuant to 28 U.S.C. §2201 and §2202 and; monetary damages for violation of New York General Business Law (hereinafter "GBL") §349, which prohibits deceptive acts or practices in the conduct of any business, trade, or commerce, or in the furnishing of any service in the State of New York.

## JURISDICTION AND VENUE

2. This action arises under 11 U.S.C. §362; 11 U.S.C. §524; Rule 7001 of the Federal Rules of Bankruptcy Procedure; 15 U.S.C. §1692(k) and 28 U.S.C. §1331.

3. This Court has jurisdiction over this adversary proceeding under 28 U.S.C § 1334(b) and the Standing Order of Reference entered by the United States District Court for the Eastern District of New York pursuant to 28 U.S.C § 157(a), dated August 28, 1986, as amended by Order dated December 5, 2012, effective *nunc pro tunc* as of June 23, 3011.  Specifically, this Court has jurisdiction pursuant to 28 U.S.C. §§ 151, 157, and 1334 as this action arose in and during the pendency of the Plaintiff's Chapter 13 Bankruptcy and after the Plaintiff obtained a discharge under Chapter 7 Bankruptcy; and pursuant to 15 U.S.C. §1692(k) and 28 U.S.C. §1331. This is a core proceeding pursuant to 28 U.S.C. §157 (b)(2). Venue is proper in this district pursuant to 28 U.S.C. §1409(a).

## PARTIES

4. Upon information and belief, Defendant, Rushmore Loan Management Services LLC, is a foreign limited liability company based in Delaware; a licensed New York mortgage banker and; and a registered New York mortgage loan servicer. Rushmore maintains its principal place of business at 15480 Laguna Canyon Road, Irvine, California 92618.

5. According to the New York City Department of State, Defendant does not have a registered agent but may receive service of process at: C/O Corporation Service Company, 80 State Street, Albany, New York 12207.

6. Romaine Gordon (hereinafter "Plaintiff") was and still is a domiciliary of the State of New York residing at 12 Runnymeade Road, East Hampton, New York 11937, in Suffolk County (the "Property").

## STATEMENT OF FACTS

7. The Plaintiff initially obtained a loan (number 7601******) with Capital One, the original creditor, in connection with the Property.

8. Upon information and belief, on or about April 2013, the Plaintiff defaulted on her first mortgage held by Capital One, as a result of her financial hardships at the time.

9. Upon information and belief, on or about August 2018, after Plaintiff defaulted, loan number 7601****** was transferred to Defendant, Rushmore, who began servicing and collecting on the first mortgage loan.

10. US Bank, National Association, as Trustee for the Chevy Chase Funding LLC, is the investor on the loan serviced by the Defendant. *See* **Exhibit "A", p.1** (Correspondence Defendant sent to Plaintiff's counsel verifying that Defendant is the servicer of the loan and Chevy Chase Funding LLC is the investor.)

11. About five years prior to Defendant Rushmore's acquiring the loan in question, on October 24, 2013, the Plaintiff had filed a voluntary petition for relief under Title 11 of the U.S. Bankruptcy Code.[1]

---

[1] *See* **Case No: 8-13-75400, Docket No: 1**.

12. The original creditor is listed in Schedule D ("Creditors Holding Secured Claims") of the Plaintiff-Debtor bankruptcy petition.[2] **A copy of Schedule D of the debtor's Chapter 7 Bankruptcy Petition is annexed hereto as Exhibit "B"**.

13. The original creditor received actual notice of the Plaintiff's Bankruptcy Petition via the Court's Electronic Filing System ("ECF"). **A copy of the Certificate of Notice is annexed hereto as Exhibit "C"**.[3]

*Discharge Violation*

14. On February 5, 2014, this Honorable Court granted Plaintiff a discharge pursuant to 11 U.S.C. §727 of Title 11 of the United States Bankruptcy Code.[4] **A copy of the discharge order is annexed hereto as Exhibit "D"**.

15. Rushmore knew or should have known that Plaintiff obtained a discharge injunction in Chapter 7 Bankruptcy because Rushmore acquired the loan from the original creditor approximately five years after the discharge became effective, and Plaintiff's Bankruptcy Petition and attendant discharge is a matter of public record.

16. Nevertheless, Defendant is intentionally or recklessly harming the debtor by reporting the first mortgage loan, currently in the amount of $560,000, on Plaintiff's credit report in violation of the discharge injunction. Additionally, the Defendant is reporting a late payment on her credit report which is also a direct violation of the discharge injunction and is misleading derogatory reporting. This wrongful reporting is preventing Ms. Gordon from obtaining a refinance for her property as she incorrectly reports a mortgage late on her credit. *See* **Exhibit "E", p. 4/6**.

---

[2] **Id**.
[3] *See* **Case No: 8-13-75400, Docket No: 7.**
[4] *See* **Case No: 8-13-75400, Docket No: 15**.

17. A letter from Plaintiff's mortgage broker, United Mortgage Corp., reveals that Defendant's misleading and derogatory reporting prevents Plaintiff from qualifying for any mortgage refinance program. According to United Mortgage Corp., Plaintiff cannot obtain a refinance of her property because Defendant is incorrectly reporting that Plaintiff is 90 days late on her mortgage payments. **A copy of the letter is annexed hereto as Exhibit "F"**.

18. Section 524(a)(2) puts into effect a broad injunction against the commencement or continuation of any action, or any act to collect, recover, or offset any discharged debt as a personal liability of the debtor. The injunction has been broadly construed to cover acts that could cause harm to the debtor because of the debt's previous existence. *See In re* Warren, 7 B.R. 201 (Bankr. N.D. Ala. 1980).

19. Debts discharged in bankruptcy should show a zero balance and be noted as having been included in the bankruptcy. *See* National Consumer Law Center, Fair Credit Reporting § 4.3.2.4 (9th ed. 2017).

20. In addition to violating the discharge injunction, a number of courts have held that a debt collector's failure to adjust credit reports to accurately reflect bankruptcy discharges furthers debt collection and violates the FDCPA as an effort to collect a debt that has been discharged in bankruptcy. *See e.g.*, *Bradshaw v. Collection Bureau of the Hudson Valley*, 2010 WL 11565277, at *8 (N.D. Ala. Mar. 29, 2010) (allowing FDCPA claim over failing to adjust credit report to reflect discharge. *See also* National Consumer Law Center, Consumer Bankruptcy Law and Practice §15.5.1.4 (11th ed. 2016).

*<u>Automatic Stay Violation</u>*

21. On January 31, 2018, Plaintiff filed a Chapter 13 voluntary petition for relief under Title 11 of the U.S. Bankruptcy Code. Marianne De Rosa was appointed and duly

qualified as Trustee. [5] On May 9, 2018, Plaintiff attended her first §341(a) Meeting of Creditors held with Trustee, Marianne De Rosa. Furthermore, Ms. Gordon's Chapter 13 plan was confirmed on or about September 25, 2018.[6] **A copy of the Order confirming Plaintiff's Chapter 13 Bankruptcy Plan is annexed hereto as Exhibit "G"**.

22. Plaintiff's debt in connection with the Property is listed on Schedule D ("Creditors Who Have Claims Secured by Property") of the Plaintiff-Debtor Chapter 13 Bankruptcy Petition.[7] **A copy of Schedule D of Plaintiff's Chapter 13 Bankruptcy Petition is annexed hereto as Exhibit "H"**.

23. On February 2, 2018, a Notice of Chapter 13 Bankruptcy Case, Meeting of Creditors & Deadlines was filed and served on Chevy Chase Funding LLC, the investor of the loan serviced by the Defendant, Rushmore.[8] **A copy of the Notice and Certificate of Notice is annexed hereto as Exhibit "I"**.

24. By virtue of this publicly available notice, Rushmore knew or should have known that Plaintiff has filed for Bankruptcy and that the imposition of unauthorized fees was prohibited under the provisions of 11 U.S.C. §362 of the automatic stay.

25. In direct violation of this Honorable Court's automatic stay order and in utter disregard of the protections that the debtor is entitled to under the Bankruptcy Code, Defendant is attempting to collect on Plaintiff's first mortgage loan and charging unauthorized fees to Plaintiff's account. Ms. Gordon is considered current while she is making payments to the bank and to the trustee and, yet, in complete disregard, Rushmore is charging her with "property preservation" fees. *See* **Exhibits "J"** and **"K"**. These fees are used for debtors in default so that

---

[5] *See* **Case No: 18-70671, Docket No: 1**.
[6] *See* **Case No: 18-70671, Docket No: 36**.
[7] *See* **Case No: 18-70671, Docket No: 1**.
[8] *See* **Case No: 18-70671, Docket No: 10**.

the lender can check the property to ensure it is being maintained. However, if the debtor is making payments to the lender and to the trustee, then there is no valid reason for charging this fee to them, other than for the servicer's own financial gain.

26. Pursuant to §362(a)(3) of Title 11 of the United States Bankruptcy Code, attempting to collect a bankruptcy fee from property of the estate while the automatic stay is in effect by adding the fee to the debtor's account is prohibited. *See Wells Fargo Bank v. Jones*, 391 B.R. 577 (E.D. La. 2008) (mortgage creditor's assessment and collection of undisclosed and improper post-petition inspection fees and other charges violated automatic stay); *In re Stark*, 242 B.R. 866 (W.D.N.C. 1999) (sanctions imposed for violating stay by attempting to collect inspection and monitoring fees).

27. As shown on Plaintiff's account activity statement dated March 19, 2019, Defendant is deliberately and intentionally imposing property inspection and preservation fees, among other unauthorized fees, in violation of the automatic stay. **A copy of Plaintiff's March 2019 account activity statement reflecting Defendant's charges is annexed hereto as Exhibit "J"**.

28. As shown on Plaintiff's account activity statement dated April 22, 2019, Defendant is again deliberately and intentionally charging Plaintiff unauthorized fees in violation of the automatic stay. **A copy of Plaintiff's April 2019 account activity statement reflecting Defendant's charges is annexed hereto as Exhibit "K"**.

29. In violation of 11 U.S.C. §362(a)(6), Defendant has added and continues to add unauthorized fees and charges to Plaintiff's account balance in violation of the automatic stay in place and despite being duly notified that an automatic stay was in effect.

30. Defendant charged Plaintiff's account unauthorized fees continuously, systematically and deliberately, despite being aware of Plaintiff's bankruptcy filing and attendant automatic stay, and despite receiving timely payments from the debtor each month.

31. Upon information and belief, and based upon the Certificate of Service on file with the Court, Rushmore had received actual notice of Plaintiff's bankruptcy filing and attendant automatic stay at the time it charged the unauthorized fees.

32. Defendant's utter lack of appropriate procedures to prevent illegal charges that violate Federal Court orders, as well as its deliberate ignorance of Plaintiff's bankruptcy filing and attendant automatic stay, prove that Defendant acted willfully, recklessly and with blatant disregard for this Honorable Court's Orders.

33. In addition, Defendant's misleading and derogatory reporting of Plaintiff's mortgage payments as 90 days late following her Chapter 13 Bankruptcy filing caused Plaintiff to incur actual damages because she was not able to refinance her property. *See* **Exhibit "F"**.

### *FDCPA Violation*

34. Defendant also had actual notice that Plaintiff was represented by counsel with respect to her first mortgage loan.

35. The filing of two publicly available bankruptcy petitions with the help of counsel demonstrate that Defendant, Rushmore, was fully aware that Plaintiff had the same legal representation for both cases.

36. Nevertheless, on January 9, 2019, Defendant sent mail directly to Ms. Gordon's home to advise her of the delinquent status of her loan and to urge her to contact Defendant directly to discuss her foreclosure alternatives. *See* **Exhibit "L"**.

37. Accompanying the letter sent directly to Plaintiff's home was a "Borrower Assistance Application" requesting financial and other important information from Plaintiff and demanding that the application be sent directly to the loan servicer's loss mitigation department. *See* **Exhibit "M"**.

38. Defendant's direct communication with Plaintiff completely disregards the attorney-client relationship and seeks to mislead and induce the Plaintiff into making legally and financially significant decisions regarding her first mortgage loan obligations without receiving the professional guidance she contracted for when she hired counsel to represent her.

39. There is no question that Defendant's conduct in blatantly disregarding that Plaintiff was represented by counsel, as well as in utterly lacking procedures necessary to ensure direct communication does not take place after Plaintiff's counsel has requested so, violates multiple FDCPA provisions, including, but not limited to, U.S.C. §1692(c) and §1692(e).

40. Ms. Gordon is pursuing a refinance in order to finish her bankruptcy early, only to discover that Rushmore has reported on her credit report a "90-day late payment" to each of the three (3) credit reporting agencies. *See* **Exhibit "F"**. Since she previously received a Chapter 7 discharge, any reporting on her credit is a direct violation of the discharge order of the Chapter 7; an automatic stay violation of the Chapter 13; and a FDCPA violation of 1692(e)(8), among other provisions.

41. Defendant, Rushmore, is a debt collector within the meaning of U.S.C. §1692(a)(6) because it acquired the loan in question from Capital One, the original creditor, after the Plaintiff defaulted on her payments. Defendant is also a self-proclaimed debt collector, as indicated on its correspondence with Plaintiff's counsel: "Rushmore Loan Management Services is a debt collector, who is attempting to collect a debt." *See* **Exhibit "A"**.

42. The Plaintiff has been damaged by the Defendant's illegal credit reporting; intentionally fraudulent charges and; direct communications; by time and cost in traveling to her attorney; legal fees; the inability to refinance her home; and emotional distress caused by the creditor's acting illegally and charging fees without authority and with impunity. *See* **Exhibit "N"**.

43. Defendant's actions denied Plaintiff the peace of mind that every honest debtor hopes for when making a "fresh start" by declaring bankruptcy. *See* **Exhibit "N"**.

44. In sum, Defendant has demonstrated a complete indifference to and utter disrespect for this Honorable Court's discharge and automatic stay Orders, as well as the provisions of the Fair Debt Collection Practices Act, since it absolutely knew that Plaintiff filed for Bankruptcy and was legally represented in this regard.

## II. FIRST CAUSE OF ACTION

### *Violation of the Discharge Injunction Pursuant to 11 U.S.C. §524(a)(2)*

45. Plaintiff repeats, re-alleges and incorporates by reference the foregoing paragraphs as though fully stated herein.

46. § 524(a)(2) of the Bankruptcy Code provides that a discharge: "Operates as an injunction against the commencement or continuation of an action, the employment of process, or an act to collect, recover or offset any such debt as a personal liability of the debtor." 11 U.S.C. §524(a)(2). Courts throughout the country consistently find that a debtor who has obtained a discharge in bankruptcy can no longer be pressured into repaying a discharged debt ever. *See McLean v. Greenpoint Credit LLC*, 515 B.R. 841, 846; *United States v. White*, 466 F.3d 1241, 1246 (11th Cir. 2006). Both the legislative history of U.S. Bankruptcy Code §524(a)(2) and overwhelming case law support the imposition of actual damages, legal fees and

punitive sanctions as a result of creditors' seeking to collect on discharged debts. "The discharge injunction is critical to a debtor's fresh start, and violations frustrate the goals of the Bankruptcy Code." 515 B.R. at 851.

47. In *McLean*, where the creditor had notice of the discharge and filed a proof of claim seeking payment of a discharged debt, the court held this was a violation of the discharge injunction and imposed contempt sanctions in addition to actual damages and legal fees. 515 B.R. at 847.

48. The case at bar is identical to McLean in that the creditor sought to collect discharged debt while having full knowledge of the discharge injunction. Rushmore had notice of the discharge injunction. Nevertheless, Rushmore blatantly disregarded this Honorable Court's discharge order and proceeded to collect on Ms. Gordon's discharged debt in direct violation of Bankruptcy Code §524(a)(2) and in furtherance of its own pecuniary gain.

49. Pursuant to this Honorable Court's discharge order, the creditor was not permitted to contact the debtor by mail, phone, or otherwise, to file or continue a lawsuit, to attach wages or other property, or to take any other action to collect a debt that was avoided or eliminated in the bankruptcy case.

50. Additionally, the Second Circuit has held that failure to delete discharged debts from debtors' credit reports may expose creditors to liability for violating the discharge injunction. In reaching this conclusion, the court in *In Re Haynes* considered the creditor's legal ability to change the credit report, the fact that the creditor let the discharged debt remain on the credit report and the fact that the creditor received a pecuniary benefit from certain payments on account of the discharged debt. *Haynes v. Chase Bank USA, N.A.*, Case No. 11-23212 (RDD) (Bankr. S.D.N.Y. Jul. 22, 2014).

51.     Here, Rushmore is liable for violating the discharge injunction because it illegally, falsely and in bad faith reported the Plaintiff's discharged debt on her credit report, thereby wrongfully damaging her credit, when it should have immediately ceased all negative reporting and collection activity.

52.     Defendant's illegal collection activity and credit reporting was carried out in utter ignorance of the bankruptcy protections afforded to the debtor under the Bankruptcy Code. This caused Ms. Gordon severe emotional distress and prevented her from obtaining the fresh start this Honorable Court deemed her entitled to. *See* **Exhibit "N"**.

53.     Plaintiff has suffered actual damages due to Defendant's violations, including but not limited to being denied a mortgage. *See* **Exhibit "F"**.

54.     As a result of Defendant's willful and reckless conduct, emotional relief, monetary damages and punitive sanctions are proper pursuant to 11 U.S.C. § 105 of the Bankruptcy Code.

## SECOND CAUSE OF ACTION

### *Violation of the Automatic Stay Pursuant to 11 U.S.C. §362*

55.     Plaintiff re-alleges and incorporates by reference the allegations set forth in the foregoing paragraphs.

56.     Defendant knew of the bankruptcy and deliberately and intentionally charged unauthorized fees to Plaintiff's account in violation of the Automatic Stay. This Honorable Court has consistently held that a deliberate action taken while the violator knew the stay was in effect warrants at least the award of actual damages.  To wit: In re Ebadi, 448 B.R. 308, 320 (Bankr. E.D.N.Y. 2011), the Court wrote that:

> A deliberate action that violates the automatic stay, taken while the violator knew that the stay was in effect, justifies an award of actual damages, with no further showing necessary. *Crysen/Montenay Energy Co. v. Esselen Assocs., Inc. (In re Crysen/Montenay Energy Co.),* 902 F.2d 1098, 1105 (2d Cir.1990); *In re Robinson,* 228 B.R. 75, 80 n. 5 (Bankr.E.D.N.Y.1998). The action itself being deliberate suffices to constitute a willful violation of the stay, even if the fact that the action would violate the stay was unknown to the offender. *See In re Robinson,* 228 B.R. at 80 n. 5; *In re Olejnik,* No. 09–76714–AST, 2010 WL 4366183, at *5 (Bankr.E.D.N.Y. Oct. 28, 2010) (citing *In re Bresler,* 119 B.R. 400, 402 (Bankr.E.D.N.Y.1990)).

> In re Ebadi, 448 B.R. 308, 320 (Bankr. E.D.N.Y. 2011)

57. The Defendant has violated the automatic stay as set forth in 11 U.S.C. §362 by attempting to collect on a debt while Plaintiff is under the protection of the United States Bankruptcy Court.

58. The Defendant willfully, intentionally and with full knowledge of the Plaintiff's bankruptcy filing violated the automatic stay by charging unauthorized fees to Plaintiff's first mortgage loan account balance. Defendant's collection activity is in violation of this Honorable Court's automatic stay order as set forth in 11 U.S.C. §362. Accordingly, this Court should award Plaintiff actual damages, punitive damages and attorney's fees.

59. This Honorable Court is more than justified in awarding punitive damages especially, since the Defendant knew or should have known that an automatic stay order was in effect with respect to Plaintiff's account. Nevertheless, Defendant intentionally chose to illegally impose and seek payment on fraudulent charges, impugning the authority of this Court and blatantly disregarding the automatic stay Order.

60. Defendant's willful and deliberate collection activity show that Defendant lacks appropriate procedures to ensure that violations of the automatic stay do not occur, and that Defendant is willfully indifferent as to whether such violations occur.

61. Defendant's blatant disregard of the automatic stay Order and incontrovertible willfulness in this matter warrant imposition of punitive damages to the maximum extent allowable under the United States Bankruptcy Code.

## III. THIRD CAUSE OF ACTION

### *Violation of the Fair Debt Collection Practices Act*

62. Plaintiff repeats, re-alleges and incorporates by reference the foregoing paragraphs as though fully stated herein.

63. Defendant, Rushmore, is a debt collector within the meaning of 15 U.S.C. §1692(a)(6) because it acquired and began servicing the loan in question after it became delinquent.

64. 15 U.S.C. §1692(e) states in relevant part:

> "Any debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section."
>
> (2) The false representation of:
>     (A) the character, amount or legal status of any debt; or
>
> (8) Communicating or threatening to communicate to any person credit information which is known, or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

65. Defendant's conduct in charging unauthorized fees on Plaintiff's account balance while the Plaintiff is under the protection of the automatic stay pursuant to 11 U.S.C. §362 constitutes a false representation of the amount of Ms. Gordon's debt in violation of 15 U.S.C. §1692(e)(2).

66. Defendant's conduct also violates 15 U.S.C. §1692(f)(1), which prohibits:

> The collection of any amount (including any interest, fee, charge or expense incidental to the principal obligation) unless such amount is expressly authorized by the agreement creating the debt or permitted by law.

67. Charging property inspection and preservation fees, among other unauthorized and fraudulent fees was neither expressly authorized by the agreement between the Defendant and the Plaintiff nor permitted by law. In fact, Rushmore is wrongfully and illegitimately attempting to increase the Plaintiff's account balance for its own pecuniary gain.

68. Plaintiff filed for bankruptcy in order to regain control of her financial situation, start afresh, and establish a plan that enables her to satisfy her debt obligations.

69. While being fully aware of Plaintiff's bankruptcy and attendant automatic stay, Defendant continuously added not one but multiple unauthorized fees to the balance that Plaintiff allegedly owes on her mortgage loan in order to intentionally circumvent the Bankruptcy Code and this Court's orders, as well as to further its own pecuniary gain.

70. Furthermore, Defendant's conduct in wrongfully reporting Plaintiff's debt notwithstanding the fact that it had been discharged in Chapter 7 Bankruptcy violates §1692(e)(8) of the FDCPA.

71. As shown on Plaintiff's credit report (Exhibit "E", p.4), Rushmore falsely and deliberately reported the Plaintiff's discharged debt to the credit bureaus, even though it knew or should have known that the Court issued a discharge injunction in 2014, thereby rendering the debt unreportable.

72. 15 U.S.C. §1692(c) states in relevant part:

> "Without the prior consent of the consumer given directly to the debt collector or the express permission of a court of competent jurisdiction, a debt collector may not communicate with a consumer in connection with the collection of any debt –
>
> (2) if the debt collector knows the consumer is represented by an attorney with respect to such debt and has knowledge of, or can readily ascertain, such attorney's

    name and address, unless the attorney fails to respond within a reasonable period of time to a communication from the debt collector or unless the attorney consents to direct communication with the consumer."

73. Here, Defendant violated §1692(c) because it mailed documents directly to Ms. Gordon while having full knowledge that she was represented by counsel.

74. Rushmore knew or should have known that Plaintiff was represented by counsel by virtue of the publicly available Chapter 7 and 13 bankruptcy petitions that Plaintiff, through her counsel, filed on October 24, 2013 and January 31, 2018, respectively.

75. Nevertheless, Rushmore chose to ignore Plaintiff's counsel and harass Plaintiff directly in regard to her debt.

76. Neither the Plaintiff nor her counsel ever consented to direct communication toward the Plaintiff by the debt collector, and the debt collector also lacked express permission from the court to communicate directly with the Plaintiff.

77. Despite having actual knowledge that Plaintiff was represented by counsel, Rushmore sent loss mitigation documents directly to Plaintiff on January 9, 2019.

78. The documents Rushmore sent directly to Plaintiff contain legally and financially significant information about which Plaintiff's counsel should have been aware in order to properly advise Plaintiff with regard to her loss mitigation options.

79. The letter Rushmore sent to Plaintiff on January 9, 2019 (Exhibit "L") is misleading because it lists the borrower's loss mitigation offers without fully explaining the consequences. In addition, it makes no mention of the importance of consulting with counsel even though Rushmore already knew that the Plaintiff was represented. Instead, it urges the borrower to complete a "Borrower Assistance Application" and mail it directly to the loan servicer. Consequently, discussing the information with counsel does not appear urgent or

necessary on the face of the letter. In fact, the letter is written such that the "least sophisticated consumer" would be deceived into thinking that Rushmore is acting legitimately.

80. Communicating legally and financially material information and prompting the borrower to communicate important information to the lender directly without clarifying that the borrower is protected by attorney client privilege as well as under the FDCPA and should discuss this information with her attorney is misleading and deceptive. Defendant's conduct seeks to induce the borrower to take important action regarding her loan without consulting her attorney.

81. In addition, the above-described conduct constitutes unfair and unconscionable conduct in violation of §1692(f) because the "least sophisticated consumer" would not understand that being contacted directly at home by her loan servicer while the servicer has full knowledge that the consumer is represented by counsel violates her rights under the FDCPA.

82. From the "least sophisticated consumer" perspective, the importance of communicating with her attorney about her loss mitigation options is not present in the letter. As such, the consumer may be deceived into entering a disadvantageous and/or incomprehensible agreement with respect to loss mitigation –which may very well involve loss of her home – even though the consumer retained counsel to act on her behalf.

83. The Defendant's actions show that it completely disregards the attorney-client relationship and the protections consumers are entitled to under the FDCPA.

84. Defendant also violated 15 U.S.C. §1692(e)(10), which prohibits:

"**(10)** The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer.

85. The act of sending mail associated with Plaintiff's loan directly to Plaintiff's home for the purpose of obtaining important information from her and eventually collecting on

the loan is deceptive and constitutes a false representation that Defendant has authority to contact Plaintiff directly.

86. As a result of Rushmore's violations of the FDCPA, Rushmore is liable to Plaintiff. Plaintiff seeks a declaratory judgment that Defendant's conduct violated the FDCPA and that Defendant will immediately cease direct communication; statutory damages in an amount up to $1,000.00 pursuant to 15 U.S.C. §1692(k)(a)(2)(A); punitive damages for Defendant's intentional and reckless violations of the FDCPA; and reasonable attorneys' fees and costs pursuant to 15 U.S.C. §1692(k)(a)(3).

## IV. FOURTH CAUSE OF ACTION
### *Violation of NY General Business Law §349*

87. The Plaintiff repeats, re-alleges and incorporates by reference the foregoing paragraphs as though fully stated herein.

88. The Plaintiff is a "consumer" as that term is defined in New York General Business Law (hereinafter GBL) §349.

89. The Plaintiff's relationship with the Defendant arose from a "consumer debt" as that term is defined in GBL §349.

90. Plaintiff defaulted on her mortgage loan, which is secured by her property in East Hampton, NY.

91. After default, the loan was transferred to and is being serviced by the Defendant, Rushmore.

92. The Defendant, Rushmore, is a "debt collector" as that term is defined by applicable provisions of GBL §349.

93. Specifically, Defendant is liable to Plaintiff pursuant to GBL §349 which states in relevant part:

> "Deceptive acts or practices in the conduct of any business, trade or commerce, or in the furnishing of any service in this state are hereby declared unlawful."

94. Defendant's conduct in charging unauthorized fees to Plaintiff's account balance while Plaintiff is protected by this Court's automatic stay order, as well as falsely reporting discharged debt to the credit bureaus constitutes deceptive acts and practices.

95. Therefore, the defendant is liable under GBL §349.

## CLAIM FOR RELIEF

96. Plaintiff repeats and re-alleges each and every allegation contained in paragraphs 1 through 93 of this Complaint as though fully set forth at length herein.

97. Pursuant to Rule 7001, the Defendant will immediately stop any illegal attempts to collect this debt during the bankruptcy.

98. Pursuant to 11 U.S.C. §524, the Defendant violated the Discharge Injunction.

99. Pursuant to 11 U.S.C. §362, the Defendant is in violation of the automatic stay.

100. Pursuant to 11 U.S.C. §362 and 524, the Defendant will incur actual damages, punitive damages, and attorney's fees and costs for the willful and intentional violation of the automatic stay and the discharge injunction.

101. Pursuant to 15 U.S.C. §1692(e) and (c), the Defendant will incur actual, statutory, and punitive damages, as well as attorney's fees and costs for its intentional violations of the FDCPA.

**WHEREFORE,** the Plaintiff respectfully requests that this Honorable Court enter judgment for the Plaintiff as follows:

    a. A Declaratory Judgment finding Defendant willfully and intentionally violated the automatic stay pursuant to 11 U.S.C. §362 and will immediately cease and desist any further attempt to collect the debt under Rule 7001;

    b. An order awarding Plaintiff actual damages; the maximum amount of punitive damages permissible under the United States Bankruptcy Code; and attorney's fees and costs incurred herein pursuant to 11 U.S.C. §362;

    c. A Declaratory Judgment finding Defendant willfully and intentionally violated the discharge injunction pursuant to 11 U.S.C. §524 and will immediately cease and desist any further misreporting to the credit bureaus.

    d. An order awarding Plaintiff actual damages; punitive damages; and attorney's fees and costs incurred herein pursuant to 11 U.S.C. §524;

    e. A Declaratory Judgment finding Defendant willfully and intentionally violated the FDCPA pursuant to 15 U.S.C. §1692 and will immediately cease and desist direct communication and illegal collection activity;

    f. An order awarding Plaintiff statutory damages of $1,000 for each violation of the FDCPA; actual damages; punitive damages and; reasonable attorney's fees and costs incurred herein pursuant to 15 U.S.C. §1692k(a)(3);

    g. Declaratory Judgment pursuant to New York General Business Law §601.

    h. For such other and further relief as the Court deems just and proper.

Dated: May 29, 2019
       Woodbury, New York

                                      */s/ Darren Aronow*_____
                                      Darren Aronow
                                      Attorney for Debtor/Plaintiff
                                      20 Crossways Park Drive North, Suite 210
                                      Woodbury, NY 11797
                                      Tel: 516-762-6701
                                      Email: Darren@aronowlaw.com